The next matter, No. 171457, Javier Rosales Justo v. Jefferson B. Sessions Good morning Good morning, Honorable Justices. May it please the Court, my name is Tania Baranis and I represent Mr. Rosales, sorry, Mr. Rosales the petitioner in this case. May the Court allow me to reserve three minutes for rebuttal? You may Thank you. This case comes before the Court after the Board of Immigration Appeals found that the immigration judge committed clear error in finding that the Mexican government was unable or unwilling to protect Rosales in granting his asylum application. The Board further stated that the immigration judge had solely based his findings on the background information in this case and not the individualized record, claiming that his findings were speculative and permissible and clearly erroneous. However, the immigration judge in his findings did cite to all of the evidence that was presented at the merits hearing, which included the individualized record that the Board claims, an autopsy of the murder of Mr. Rosales' son, the investigation started by the Mexican government, and stated that that all went to support a finding of the government's willingness to protect Rosales. Upon looking at the record as a whole, he deferred to country conditions by the Department of State, human rights reports, and articles pertaining to the violence and crime in Mexico in order for him to find the government's ability to protect Rosales. Based on that, he found willingness and not ability, citing to Catock v. Holder, which this Court held in 2013, that there is a need to differentiate between willingness and ability. In that case, the Pakistani government had shown willingness to protect Catock but had not shown ability to protect Catock. What is the legal error in the BIA's analysis? The Board is claiming that the immigration error, the clear error, when only deferring to the background information, and that the individualized record supported a finding that the government was able and willing to do so. However, when looking at the clear error review, one must ensure that the Board of Immigration Appeals is not becoming the fact finder. Here, by stating that the judge gave more weight to background evidence than the individualized record, they're essentially stating that certain evidence should be given more weight than the other. Again, that would go more as a trial error fact, and the Board of Immigration Appeals is not the trial error fact. In an issue where we are determining the government's ability and willingness, we must look at the facts. It's a question of facts, which this Court established in Ortiz v. Hidalgo, and is a case-by-case situation. In this case, the immigration judge referred to all of the evidence that was submitted at the merits hearing. It is to be noted that none of the evidence was objected to by the Department of Homeland Security. Your position is that the legal error is that the BIA incorrectly applied the clear error test to the findings of the IJ? Is that what you're arguing? Yes, Your Honor, I am. Because if they were to use clear error, they would then have to find that there was a clear mistake in relying on that background information. And as I stated, the background information is country conditions by the Department of State, the government agency, human rights reports, articles pertaining to crime and violence, evidence that was submitted at the merits hearing and not objected by the government, and evidence that is widely accepted and used very commonly in immigration law, and more specifically in asylum law, in looking at the requisites of asylum, and in this case, in the government's ability and willingness to protect. So country condition reports of necessity speak in generalities, right? Yes, that is correct. If the generalities in a country condition report are decisive on the ability to protect, wouldn't it follow that in almost every case where someone seeking asylum wants to rely on the inability of the government to protect them from future persecution, they could simply cite these general country condition reports and claim that on the basis of those reports, they met their burden to establish inability? Isn't that a, if that's a correct assessment of how one could use those reports, isn't that problematic? I do understand that argument. This Court has stated that country conditions stand alone and are not sufficient to show it because of the generality of them. But in this case, in these findings, the immigration judge did not solely rely on country conditions from the Department of State. It also relied on human rights practices and articles that cited to the current violence in Mexico, and even more so in the region in which Rosales lived, which was the state of Guerrero in Mexico. And so it wasn't, it's not a general application of just using country conditions in this case. Is there evidence in the record about the conditions in the state of Guerrero? Yes, in the country conditions, Guerrero is one of the highlighted states that has a very high increase of violence. The judge also stated that in the country conditions, the Mexican government had implemented efforts to combat organized crime. However, the statistics show that they were unsuccessful with those efforts and actually had increased crime and violence in these states. He cited to 20% increase in homicides in the state of Guerrero. Is there any evidence in the record as to the particular issues faced by police officers in the state of Guerrero? It does talk about police officers in the sense of corruption and impunity in investigations, and that's what he cited in his findings. Rosales was a police officer for over 10 years in the state of Guerrero, so I do think it's worth mentioning that he was in that occupation. And he, in his testimony, justified to the amount of homicides that he responded to on a daily basis, what the investigation process was in the municipality of Acapulco, where he lived. And so with 10 years of experience, he spoke to that. Again, no objection by the government in that, and the immigration judge found him credible in his testimony. So there's evidence in the record that he was aware of the state of police investigations of these situations? Yes. Thank you. Could you go back to, I'm not sure I understood your answer to Judge Lopez's question. Is it your position that we're reviewing the correct, whether the IJ committed clear error, or are we instead reviewing whether there's substantial evidence to support the board's determination? Because there's a big difference between those two. Well, I do think that if we're looking at the substantial evidence on the record to support their claim of clear error, then we would be looking at where they found that the immigration judge only referred to the background evidence, which then comes back to the immigration judge, whether or not he committed clear error. Can you point to any case that would, in which there's substantial, the board issues its own decision. That usually means we review the board decision, not the IJ decision under our precedent. So the board issues its own decision. There is substantial evidence to support the board's decision, but there's also substantial evidence to support the IJ's reversed decision. In that scenario, the difference between those standards of review would be dispositive. Could you point to any case in which a court of appeals reverses the board in such a situation, even though there's substantial evidence to support the board's final determination? From this circuit, Your Honor, I don't have exactly on that. If we were to go to the board's findings, again, they stated that the immigration judge only looked to the background evidence. And if we look at what a clear error review is about, the board is supposed to look at the judge's findings and not determine whether if they were the fact finders, would they have weighed certain evidence more than others. And so in this case, by them saying that the immigration judge discounted all of the individualized record and solely relied on the background, they're then inferring that there should be more weight given to the investigation that was initiated by the government and not include or completely discount the country conditions, the human rights report, and the other evidence. Again, evidence that was not objected by the Department of Homeland Security, evidence that is what we accepted and used in immigration. And by claiming that, I think they essentially tried to become the fact finder. And the trier of fact here is the immigration judge. Any other questions? So again, my sister has used the Conn v. Holter case, which also talks about the inability and unwillingness of the government to protect. And in that case, this court found that there is a distinction between inability and unwillingness. In the Conn case, they found both willingness and ability. Counsel, I guess this would be a leading question, but I'll ask it anyhow. You just indicated that there is a difference between unwillingness and inability. Why wouldn't the legal error, arguably, of the board here be contrary to what the I.J. did? The I.J. was very careful to separately analyze unwillingness and inability. By contrast, the BIA seems to have conflated the two. It is very hard to find any separate analysis of those two issues. Why isn't, arguably, that a legal error in the board's decision? Not, as you seem to say, sort of a misapplication of the clear evidence standard in reviewing the decision of the I.J. The error seems to be that they don't even recognize that those terms are phrased in the destructive and they have to be analyzed separately. I do think that when they cite Conn, they are showing that this court has established that there is a difference. I do feel that when they cited to Katak and Conn, they are acknowledging that this court has established a difference with willingness and ability. However, I do agree that they did not point out exactly the difference in them and grouping them together, which is shown also in the brief by my sister that I think everything that they have cited to goes to support the willingness and they have nothing to show the inability of the government to protect. And so this court has established that there is a distinction between the two. It is also different than Katak and Conn in the procedural matter as well. In both those cases, the immigration judge as well as the board denied and did not find for the respondent. And here we have a case in which the immigration judge did find. And we'll have more time in rebuttal. Thank you. Thank you. Please do. Good morning. Good morning, Your Honors. May it please the Court, Rebecca DeHaas for the United States Attorney General. I'd like to start with Your Honors' questions about the standard review in this case. I believe that the standard review is substantial evidence because Petitioner waived any challenge to the board's application of the clear error standard. And in her brief, she does not argue that the board engaged in fact-finding or mischaracterized the evidence. There's no framing of the issue as the board misapplied the clearly erroneous standard. So, therefore, that issue has been waived. And so what we're left with is the board's decision and the question of whether substantial evidence supports the board's decision. And the government's position is that it certainly does. The Mexican government took really aggressive measures to investigate Petitioner's son's unfortunate murder. Where is that evidence? I'm sorry? These extraordinary actions by the Mexican government to solve this, is that evidence in some way in the record? Yes, Your Honor. The evidence shows that the- Tell me what it is. Is it a document? Is it just a statement or what? It's both testimony by the Petitioner as well as documents that the Petitioner submitted. So the Petitioner acknowledged that seven federal police officers and a forensic team immediately arrived at the crime scene as soon as the body was found. And that the record evidence- I thought the government's view was that the Petitioner hadn't taken any actions to report the crime, et cetera, et cetera. Your Honor, there's, I guess, several crimes in this case. There were some threats that were made that were not reported. And so the government's position is with respect to those threats, because the Petitioner didn't report it, we can't blame the government for failing to protect him from threats they didn't know about. You're talking about the original threat to the wives. Didn't that become irrelevant once they found that the son had been murdered and the government was there investigating? Your Honor, I was referring to the inquiries that the individuals made about Petitioner's whereabouts, which prompted Petitioner coming to the United States. He never reported those inquiries to the police. But going back to- But, Johnson, if I may, on that issue, the IJ made a credibility finding, I think. The Petitioner's test acknowledged that they did not report the activities of people driving around their house, strangers, neighbors, telling them that this was happening. And they explained that they were afraid to report any of that because they felt the police were corrupt. And if they reported that kind of activity, they could be subject to the very kind of retaliation that they were worried about. What would permit the BIA to hold that against the Petitioner's in light of that credibility finding by the IJ? Your Honor, first, the Petitioner, well, he didn't report the threats. And so to say that the government failed to protect him in that instance is unsupported, regardless of the reason for why he didn't report it. He indicated that he was afraid. So we don't have that evidence in the record that, you know, he reported it and they didn't do anything. In any event, the record evidence supports the other position that had he reported it, they would have taken those steps. There was steps. Investigate? Yes, Your Honor. And what did they find in the first investigation which involved a murder? Your Honor, so in that instance, that crime was reported and the police took certain steps to investigate it. And yes, the record is unclear on the status of that investigation. When asked, Petitioner acknowledged that he didn't know whether anyone had been arrested. And so on this record, potentially these individuals had been arrested. Well, he didn't know because he left the country. Right. Whatever the reason is, though, on this record, we don't know the status of the investigation. So we can't say that no one has been arrested. Isn't there some kind of a burden on the government to find out what happened to this investigation? Have they got a claim that he wasn't doing anything? No, Your Honor. The burden lies with the applicant to present that evidence. And so, you know, if there's new evidence, the applicant can present that to the Board of Immigration Appeals and then motion to reopen. However, we don't have that before us. There's no suggestion that the Petitioner has looked into the investigation and found out that no arrests have been made. So that's just not the situation in this case. But in any event, this court's precedent doesn't require perfect policing. The Petitioner and Khan also reported a crime. And the police took down a report, took down a witness statement, and attempted to investigate the crimes, but were ultimately unable to make any arrests because the identity of the assailants were unknown. Likewise here, the Petitioner acknowledged that they didn't know, him and his wife didn't know who committed the murder or who made the threats or who were inquiring about them. And so the police can't be, again, faulted for failing to solve a crime that perhaps even police in the United States wouldn't be able to solve. You know, the court has really explained that as long as the government is making, you know, some measures at protecting its citizen, it can't be faulted for not being able to protect everyone all the time. So what, in order to establish that the government is unable to protect an individual from future persecution, what kind of showing would they have to make in order to meet that prong? Well, I'm not a fact finder, but hypothetically speaking, I think that if there was evidence that they went to the police and the police said, look, sorry, we don't have the resources right now to look into this, or if they just turned them away, not because of an unwillingness, but a lack of resources or a lack of ability. But the record here indicates the contrary. But isn't that, in effect, isn't that what the IJ was saying, the country condition reports reveal? Those reports do talk specifically about the state of Guerrero, and they talk about the very high murder rate there, I think the large incident of unsolved crimes. I mean, those reports, the IJ does talk specifically about Guerrero. There seems to be something particularly problematic about the ability of law enforcement in Guerrero to protect its citizens from gang activity. Certainly the record evidence does show that Mexico is struggling to protect its citizens. Mexico generally, but the state of Guerrero in particular. I'm sorry, you're right, Your Honor, the state of Guerrero, which is where Petitioner is from and was residing. However, the actual individualized evidence, how the police actually responded, is more persuasive, which is why the board reversed the immigration judge's findings. Well, it's persuasive on their willingness to try to do something, but why is it equally persuasive on the issue of their ability to protect? Because in this instance, they did demonstrate that ability. If I can go back to what steps that they took to investigate the murder, they sent seven federal police officers, a forensic team. They also sent in forensic and criminology experts to opine on the manner and place of death. The Guerrero Attorney General's Office ordered an investigation and issued a memorandum explaining the steps that the Mexican state would take in order to investigate it. So these are not... But you have no... They took all those steps. They're in the record, and there's nothing in the record as to any outcome of that. Doesn't that mean that nothing happened? Well, I don't believe, because when asked whether any arrests had been made, Petitioner said he didn't know. So on this record... Well, the fact that he didn't know, it would seem to me that he would have been made aware in view of the fact that it was his son that was involved in the murder. Right, Your Honor. And so the fact that he said, I don't know, suggests that perhaps an arrest had been made, right? No, no. It would suggest to me the opposite. It would suggest to me that nothing has happened. Right. Well, again, Your Honor, I want to cite a matter of Khan, which says, when the government is making every effort to combat violence by private actors and its inability to stop the problem is not distinguishable from any other government's, then there's no government nexus, which, you know, here, let's assume that there were no arrests or prosecutions. Petitioner acknowledged that they didn't know the identity of the perpetrators, which would have inhibited the government's ability to find and arrest the perpetrators. And I also want to cite one... His knowledge as a police officer as to how things were operating within the police in not just Mexico, but in Guerrero. He testified that he was a police officer for 11 years and that he's witnessed many murders and that often they're unsolved. And, you know, that's consistent with the record evidence. However, in his case, the government took really extraordinary measures to investigate the crime and perhaps because he is a police officer that they took those steps because he's one of their own. And so I think that, you know, the court in Ortiz addressed a similar issue where the petitioner had been robbed by a gang member and the police in El Salvador arrested and prosecuted the gang member, which I acknowledge we don't have here. However, we have a really strong investigation. And the petitioner tried to argue that, oh, I'm afraid that when the gang member comes out of jail he's going to threaten me and harm me or other gang members might. And the petitioner tried to rely on generalized country-conditioned evidence showing that gang violence is running rampant in El Salvador and that the police are struggling. And the court said, no, we don't look at the... or that the generalized evidence can't save the day. That doesn't override the particularized evidence here that the Salvadoran government did take those steps to protect you. So I think that this case is indistinguishable from Ortiz. Counselor, can I just ask you, on the issue of whether the BIA sufficiently distinguished between unwillingness and inability to protect from future persecution, do you take the position that to the extent that that failure to distinguish might be a legal error, that appellant has not raised that argument? That argument has not been raised, Your Honor, and it's been waived. But I would... Didn't the board... I thought the board said that the respondent has the burden of showing either that the police are unable or that they're unwilling and that the use of the disjunctive in that situation is completely correct. He could show either one of those, but they found he did not show either one of those. That's right, Your Honor. The board applied the correct standard by describing the standard in the disjunctive and I would say that this court doesn't separate that analysis out either in the way that petitioner sort of suggests the board should have done. They said the standard correctly and they looked at the evidence both of the government's willingness, which is certainly there, and its ability in that it had the resources and it took all these extraordinary measures. So you're saying that in our precedents we do not recognize that those are two separate issues? No, the court does, of course, and it is two separate issues. However, separating out that analysis so starkly as petitioner would have it, I think, is inconsistent with the precedent. You look at how did the police respond and that evidence shows you that they're both willing and because they have the resources to investigate or prosecute, then that also shows that they're able. That's my point, Your Honor. There are two. It's or, unable or unwilling. Unless Your Honors have any other questions, the government would ask that the petition review be denied. Thank you, Your Honors. As to the question of unwillingness or inability, they are two separate issues and this court has already differentiated the two with the cases that have been cited. It was also established that this is a facts-based case. It's actually different from the case that my sister cited too and the O.T. Serenado case. In this case, we have witnesses that were found credible. Rosales, who has over 10 years of experience in Bacapuco Police Department, his experience in investigations, how many unsolved crimes that he had seen. We're also talking about his son being kidnapped, tortured, and murdered, his 16-year-old son, in broad daylight, in the early afternoons when he was kidnapped. All of these factors are very distinguishable. In fact, distinguishable from the cases that were cited by my sister. The aggressive response by the police department, although I would not call it aggressive response, it did initiate an investigation. There were seven officers at the crime scene, all of which were cited in the immigration judge's decision. Again, all going to the willingness of the government to protect Rosales, but not going to the ability. Doesn't that go to ability too? Because if you take the general State Department position, that there is a problem and as a general matter, there's a higher incidence of inability as well as unwillingness. That would include some departments that are able. It would include some departments that are not able. And among those that are not able, it would include ones that don't even have the resources, much less a whole forensic team to send out. So we know already here from this specific that we're excluding those. And once we exclude those, then how do we apply any general proposition to this specific incidence? I don't think that we would be applying anything generally. This court has pointed out in previous cases it's fact specific. We have to look at the facts. Here we're looking at the state of Guerrero. We're looking at a specific region in Mexico. We're also looking at Rosales, who is a police officer of over 10 years experience. We are looking at the type of crime that it was. I mean, I do think this is a very fact specific issue. And here the immigration judge took all of it into consideration, acknowledged all of the evidence that was presented, and did agree to the government's willingness, however did not find the ability. And it would be difficult to find that ability, as was shown that my sister could not cite to a case that would really be able to show that ability of a government to protect. Other than in Cannes, where there was success in the efforts by the Pakistani government, Cannes also conceded to that success of the efforts. Here we do not have that. Here we have the contrary. We have an increase in homicides and in crime. Thank you. Thank you.